Law Offices of Robert Tsigler, PLLC     Telephone: (718) 878-3781
299 Broadway, Suite 1400
New York, New York, 10007

Facsimile: (718) 643-3303
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
**LUCIEN SIMPSON-QUIN,**

                 **CASE NO:**

             *Plaintiff,*

-against-

**ALYSSA MONTEJANO,**

            *Defendant.*
-------------------------------------------------------X

## COMPLAINT

**LUCIEN SIMPSON-QUIN**, hereinafter referred as "Plaintiff" by and through his attorneys, Law Offices of Ro bert Tsigler, PLLC upon his knowledge and belief, and as against **ALYSSA MONTEJANO**, hereinafter referred as "Defendant", alleges as follows:

### NATURE OF THE ACTION

1. This a civil action against Defendant. The Complaint addresses tortious acts Defendant committed against Plaintiff.

2. Complaint consists of two causes of action: Defamation and Tortious Interference in Business Relations.

3. On or about September 16, 2022, Defendant made false and defamatory statements in Criminal Complaint.

4. On or about September 17, 2022, Defendant made false and defamatory statements to Plaintiff's employer, JP Morgan Chase & Co.

5. On or about September 17, 2023, Defendant made false and defamatory statements to 19 India Fee Owner LLC, an owner of the premises known as and located at 21 India Street Brooklyn, New York, 11222.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. §1332 Diversity of Citizenship. There is complete diversity amongst Plaintiff and Defendant since Plaintiff resides in Australia and Defendant resides in New York, U.S.A. and the amount of controversy exceeds the sum or value of $75,000.

7. Defendant's residence is unknown to Plaintiff.

8. To the Plaintiff's best knowledge, Defendant is employed at American Express on the Global Co-Brand team as an Associate.

9. Defendant's work address is: 200 Vesey Street, New York, NY 10281.

10. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district.

## THE PARTIES

*Plaintiff*

11. Plaintiff **LUCIEN SIMPSON-QUIN** ("Plaintiff") is an adult individual residing at 26 Wooloowin Avenue, Wooloowin QLD 4030, Australia.

*Defendant*

12. Defendant **ALYSSA MONTEJANO** ("Defendant) is an adult individual whose residence is unknown to Plaintiff.

13. At all times relevant to this suit, specifically from September 2019 to September 2022, Defendant resided with Plaintiff at 21 India Street, Brooklyn, New York 11222.

## FACTUAL ALLEGATIONS

14. Plaintiff and Defendant were in an intimate relationship for over eight (8) years.

15. Defendant was Plaintiff's Fiance from April 16, 2022.

16. Plaintiff and Defendant lived together in New York from May 21, 2017 until September 16, 2022.

17. Plaintiff and Defendant lived together at 21 India Street, Brooklyn, New York 11222, from September, 2019.

18. On or about September 16, 2022, Defendant filed a false Criminal Complaint against Plaintiff which led to Plaintiff's arrest.

19. Defendant alleged that Plaintiff committed offenses against her on or about September 9, 2022.

20. Plaintiff was arrested and charged in connection with certain offenses on September 16, 2022. Plaintiff was imprisoned overnight twice and released without bail on both occasions.

21. Defendant alleged that Plaintiff "physically assaulted her by throwing her into a wall and grabbing her wrist which caused pain and swelling…"

22. The allegations in the subject Criminal Complaint were completely false and made up.

23. Plaintiff denied that he committed any of the alleged criminal offenses against Defendant.

24. Plaintiff stated in Court that Defendant's bruises resulted from self-inflicted injuries for the sole purpose of getting Plaintiff arrested.

25. Plaintiff incurred $20,000.00 in attorneys' fees in order to defend himself in the criminal case.

26. On March 1, 2023, Plaintiff resolved the matter and all charges against him will be dismissed and sealed on or about February 29, 2024.

27. Plaintiff had no prior arrests and he was never accused of committing domestic violence or any acts of violence whatsoever prior to these false allegations.

28. Prior to the criminal allegations, it was actually Plaintiff who filed a police report against Defendant due to the fact that Defendant was intoxicated and aggressive toward him.

29. Defendant has a prior history of making false allegations against Plaintiff while being intoxicated.

30. Defendant never filed a police report against Plaintiff in the past but verbally falsely accused Plaintiff of being abusive with knowledge that these statements are false.

31. On or about June 14, 2017, Defendant sent a Letter to her mother Lisa Bigrigg and Plaintiff himself, acknowledging that she *falsely accused Plaintiff* of pushing her and that Plaintiff was not abusive. She further states "I don't know why I'm not honest when I drink and or why I think things happen that don't happen…" She further acknowledges that *she lied to the police*. A true and accurate copy of Defendant's email to her mother Lisa Bigrigg and Plaintiff is attached as **Exhibit 1.** *(emphasis added)*

32. In response to the above mentioned email, Defendant's mother Lisa Bigrigg, suggested Defendant to get help. See **Exhibit 1.**

33. Due to Defendant's false statements about Plaintiff's alleged criminal offenses, made in communications to Plaintiff's employer JP Morgan Chase & Co. and landlord, Plaintiff lost employment and his only source of income (approximately $485,000 annually).

34. On or about September 19, 2022 and only three days following the arrest, Plaintiff was informed by his Manager, Joy Dowd at JP Morgan Chase & Co, that they were undertaking an investigation against him and that he was not allowed to contact anyone during the investigation.

35. Furthermore, JP Morgan Chase & Co. put Plaintiff on administrative leave.

36. The following day, on or about September 20, 2022, Plaintiff's E-3 visa was revoked due to these false statements.

37. Plaintiff received an email informing him that his visa was revoked pursuant to 221 (i) Immigration and Nationality Act. A true and accurate copy of email is attached as **Exhibit 2.**

38. On or about October 31, 2022, Plaintiff was informed that JP Morgan Chase & Co., terminated his employment. Plaintiff lost his entire income thereafter.

39. Despite Plaintiff's multiple requests, JP Morgan Chase & Co. never disclosed the reason for termination to Plaintiff.

40. Furthermore, Plaintiff never received a letter of termination from JP Morgan Chase & Co.

41. Plaintiff was informed by the HR Manager that the reason for the termination was confidential.

42. Plaintiff has reason to believe that his termination has everything to do with Defendant's allegations.

43. To the best of Plaintiff's knowledge, there was no reason whatsoever for JP Morgan Chase and Co., to terminate his employment except that they were misled by the Defendant's false allegations against him.

44. Reasonable inference between the chain of events is obvious since Plaintiff was placed on administrative leave only three days after Defendant filed a false criminal complaint against him and then he was terminated before there was anything proved against him.

45. Plaintiff will respectfully request from this honorable Court issuance of a Judicial Subpoena so any and all JP Morgan Chase & Co., employees who have personal knowledge regarding Plaintiff's termination can testify in Court regarding the facts and circumstances surrounding the termination.

46. After Defendant made false allegations against Plaintiff and got Plaintiff arrested on September 16, 2022, Defendant convinced Plaintiff's building management to change the locks to the apartment notwithstanding that Plaintiff had resided and paid the majority of the rent. Lease payments were deducted from Plaintiff's personal checking account thereafter.

47. Thus, Plaintiff was unable to retrieve any of his personal belongings, including, but not limited to, his Passport and laptop.

48. Defendant and presumably her family and/or friends, stole and/or discarded almost all of Plaintiff's personal effects from the apartment. The amount of stolen property was approximately $46,975.61.

49. In this regard, Plaintiff through his Attorney Craig Herkowitz from the Law Offices of Robert Tsigler, PLLC attempted to obtain surveillance footage to determine who was involved in the ransacking of his apartment.

50. However, building management through their attorneys Belki, Burden, and Goldman LLP, never responded to our Attorney Subpoena.

51. Therefore pending this action Plaintiff will respectfully request Judicial Subpoena from this Court to obtain above-mentioned surveillance footage.

52. In or around October 2022, Defendant fraudulently coerced building management to pay her the apartment deposit $4,770.00 without Plaintiff's knowledge or consent notwithstanding the fact that the deposit was deducted from Plaintiff's personal checking account without his authorization.

53. Plaintiff and Defendant leased a car together, Audi - Q7 approximately worth $70,000.00. Plaintiff was the one making all of the lease payments.

54. Defendant disappeared with the car without Plaintiff's knowledge or consent and, by making false statements, convinced Audi representatives to transfer the title of the car to either herself or another person, again, without Plaintiff's knowledge or authorization.

55. Defendant destroyed Plaintiff's Passport and Social Security Card.

56. The foregoing statements displayed an intent to injure Plaintiff in his profession.

57. The foregoing statements improperly charged Plaintiff with committing criminal acts including, but not limited to, making false statements to police officers.

58. The foregoing statements were intentional and meant to harm Plaintiff's character and reputation in his profession/workplace.

59. By the reasons of the foregoing, Plaintiff has been defamed.

60. By the reasons of the foregoing, Plaintiff has sustained a loss of employment.

61. By the reason of the foregoing, Plaintiff lost his E-3 visa and incurred immigration expenses in the amount of $2358.50.

62. By the reason of the foregoing, Plaintiff had no choice but to retain a criminal attorney to defend himself in court and incurred $20,000.00 in attorneys' fees.

63. By reason of the foregoing, Plaintiff suffered mental anguish and suffering.

64. By reason of the foregoing, Plaintiff was slandered.

65. Defendant did make defamatory statements and they were not classified as privileged or confidential communications.

## CLAIM

### CAUSE OF ACTION

### (DEFAMATION pursuant to *28 USC §§ 4101*)

66. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

67. Pursuant to *28 USC §§ 4101* "The term "defamation" means any action or other proceeding for defamation, libel, slander, or similar claim alleging that forms of speech are *false, have caused damage to reputation or emotional distress, have presented any person in a false light, or have resulted in criticism, dishonor, or condemnation of any person.*"

68. To prove prima facie defamation, a plaintiff must show four things: 1) a false statement purporting to be fact; 2) publication or communication of that statement to a third person; 3) fault amounting to at least negligence; and 4) damages, or some harm caused to the reputation of the person or entity who is the subject of the statement.

69. Defendant knowingly made false statements against Plaintiff to police which resulted in Plaintiff's being arrested two times.

70. While Defendant made all those false allegations in Criminal Complaint, it further damaged his reputation in his place of business - JP Morgan Chase & Co., eventually leading to Plaintiff's termination.

71. Defendant's statements satisfy the requirements of Defamation since she made a false statement to JP Morgan Chase & Co., Plaintiff's employer and place of business. Defendant's acts not only amounted to negligence but it was more than negligence since her statements were intentional.

72. Through discovery, we will become aware of the exact statements the defendant made to JP Morgan Chase & Co. and they would not have led to Plaintiff's termination if they were not clearly defamatory.

73. In addition to defendant's false allegation in the criminal complaint and to statements which Defendant and/or her associates made to JP Morgan Chase & Co., Defendant defamed Plaintiff in communications to Plaintiff's building management, which led to Plaintiff's ejection and Plaintiff lost an opportunity to continue his lease and remain in the apartment after Defendant was no longer there.

74. Plaintiff will be able to prove the content of defamatory statements made to JP Morgan Chase & Co., after the employees who have personal knowledge of the facts and circumstances of the case.

75. Plaintiff were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

**(TORTIOUS INTERFERENCE IN BUSINESS RELATIONS)**

76.    Due to Defendant's allegations, Plaintiff lost his job at JP Morgan Chase & Co., as Executive Director with an annual salary $485,000.00.

77.    Due to the Defendant's allegations, Plaintiff also lost his E-3 visa, performing services in a specialty occupation.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully request that this Court enter judgment against Defendant by:

(a)    Declaring that Defendant defamed Plaintiff.

(b)    By the reason of the foregoing Plaintiff demands damages in the form of Loss of Employment in excess of $485,000, which was Plaintiff's annual salary.

(c)    By the reason of the foregoing Plaintiff demands damages in the form of $20,000.00 for attorneys' expenses to defend himself in a criminal action that Defendant initiated against the Plaintiff.

(d)    By the reason of the foregoing, Plaintiff lost his E-3 visa and incurred immigration expenses in the amount of $2,358.50.

(e)    By the reason of the foregoing Plaintiff retained employment attorney in an attempt to obtain confidentiality agreement from JP Morgan Chase & Co, and incurred attorney expenses in the amount of $5,000.00.

(f)    By the reason of the foregoing Plaintiff demands damages in a form of non-economic damages for pain and suffering.

(g)    By the reason of the foregoing, Plaintiff demands damages in the form of Punitive Damages for intentional infliction of emotional distress, amount to be determined at Trial.

(h) By reason of the foregoing, Plaintiff demands attorney fees, costs and disbursements incurred for this action.

(i) All such other and further relief as the Court deems just and proper.

Dated: New York, New York

September 5, 2023.

By: *Edwin Drantivy, Esq.*
EDWIN DRANTIVY, ESQ.
ATTORNEYS FOR PLAINTIFF
LAW OFFICES OF ROBERT TSIGLER, PLLC
299 BROADWAY, SUITE 1400
NEW YORK, NEW YORK 10007
(718) 878-3781
EDWIN@TSIGLER LAW.COM

Document 1 Filed ----- Page 12 of 12

## VERIFICATION

CITY OF VALENCIA }

COUNTRY OF SPAIN }

Kingdom of Spain
ss:
Province and City of Valencia } S S
Consular Agency of the United States of America

**LUCIEN SIMPSON-QUIN** being duly sworn, says that he is the Plaintiff in the above-named proceeding and the foregoing Complaint is true to his knowledge, except as to matters therein stated to be alleged on information and belief and as to those matters he believes it to be true.

_____
**LUCIEN SIMPSON-QUIN**
**PLAINTIFF**

Subscribed and sworn to before me

on _13th_ day of _Sept._, 2023.

_____
NOTARY PUBLIC
My commission expires on _does not expire_

**Katherine J. Matles**
U.S. CONSULAR AGENT
Valencia, SPAIN

Consular Agency of the
United States of America
C/. Dr. Romagosa, 1 - 2nd Floor, Suite J
46002 Valencia, Spain

